May it please the Court, Tim Wordenhertz of the Northwest Immigrant Rights Project, on behalf of Vu Nguyen, I will seek to reserve three minutes for rebuttal. Petitioner challenges the incorrect interpretation applied by the board member in this case, an interpretation that violates the plain, unambiguous language of the statute, and is contrary to the reasoning of this Court's prior holding. The question presented is whether my client's admission in court that he had experimented with drugs in 2005, which did not make him a lawful permanent resident, subject to the grounds of inadmissibility under 1182, or the grounds of deportability under 1227, would that nonetheless have cut off his period of continuous residence under the statute providing relief. My client has conceded being deportable, removable under 1227, based on his convictions from 2013 to 2015, yet he should have been given the opportunity to at least apply for cancellation of removal, the one opportunity that Congress has provided for lawful permanent residents who would otherwise be subject to removal based on their convictions. We do not ask this Court to grant this relief, only that my client be able to present his case to the Immigration Court to ask for a second chance under the statute that Congress has provided. However, the immigration judge and then a single member of the Board of Immigration the stop time provisions at 1229BD1. However, the express terms of the statute require not only that a person commit a crime referred to in 1182, but also that it render you inadmissible under 1182 or removable under 1227. And let's start with the plain language of the statute. In the relevant section of 1229BD1, it finds that the continuous residence is cut. When the non-citizen has committed an offense referred to in section 1182A2, that renders the non-citizen admissible to the United States under section 1182A2 of this title, or removable from the United States under section 1227A2 or A4 of this title. The Board's interpretation does not give effect to the plain language of the statute, which sets up this two-step, two-prong approach, that a crime must be referred to under 1182 and then make one inadmissible under that very same 1182 or deportable under 1227A2. In addition to failing to follow the plain language of the stop time rule and the framework of the Immigration and Nationality Act, the single board member in this case nullifies a significant section of the stop time rule, nullifies the renders removable under 1227A2. And that's because under the respondent's reading, any offense that falls under 1182A2 would make or render everyone inadmissible, leaving the stop time rule simply as commits an offense that renders him inadmissible under 1182. And those aren't the words that Congress wrote. And no one has been able to come up with an example in the years of litigation in this case, in prior cases, that would give meaning to those words. The Fifth Circuit in Collix fails. Their example runs counter to board precedent that finds that, in that case, that it wouldn't have been referred to in 1182A2 and so would not trigger that first step of the stop time rule. And in fact, you know, respondent concedes, perhaps euphemistically, that the example is not ideal. Respondent's example further does not demonstrate or resolve any redundancy problems created. Their example starts with the premise that it's a lawful permanent resident who is seeking admission. There are certain provisions under 101A13C where a lawful permanent resident returning from a trip is deemed to be seeking admission and then is subject to the grounds of inadmissibility. And in that case, we concede that a ground, an offense that's referred to in 1182, would you are then seeking admission, would render one inadmissible. That isn't the case here. My client, Mr. Wynn, is not seeking admission. That's not in dispute. It's not in dispute that he could not have been charged under 1182. He could only have been charged under 1227, and he conceded to being removable under 1227 based on the 2013 to 2015 convictions. The respondent rather suggests that it's understandable that certain superfluities appear in the statute. And that's at page 21 of their brief. The Supreme Court, however, has made clear that proper statutory interpretation requires us to give meaning to each of the words that Congress chooses. Well, and also, this is not one of those statutes where Congress has said, has a long laundry list of 10 things that might arguably, you know, overlap or even be included one within the other. This is two very specific either-or possibilities. I completely agree. And, in fact, this Court's reasoning in Gonzales-Gonzales, I think, is a great example of that. In Gonzales-Gonzales, which was a case under a different paragraph of the same cancellation of removal statute, in that case, the non-lawful permanent resident cancellation, right? So Mr. Gonzales-Gonzales in that case is undocumented. He's subject to the grounds of inadmissibility, not the grounds of deportability like my client, Mr. Wynn. And in that case, he says, look, I have an offense that only falls under 1227A2, not under 1182. So he says, I should be able to therefore apply for non-lawful permanent resident cancellation under 1229BB. And the statute in 1229BB1C, which is the restriction on eligibility for that non-lawful permanent resident cancellation, there it does have a laundry list, right? So it says you're not eligible if you've been convicted of an offense under, and it lists out the statute. So 1182A2, 1227A2, 1227A3. And the Court in Gonzales-Gonzales, this Court in Gonzales-Gonzales, finds that to have meaning, that Congress chose sort of the laundry list approach in 1229BB1C, and actually explicitly contrasts that with the language in the stop time rule that we're discussing here in 1229BD1. And finds that when Congress wanted to give the meaning that Mr. Gonzales was saying, which is, hey, look, I'm only subject to inadmissibility. So because my crime only falls under 1227, it shouldn't stop me, that if Congress had wanted to do that, that it knew how to do so, and that we know that from the stop time rule language. And so, you know, this Court has already explored that reasoning and that contrast between a sort of laundry list approach versus the division between the two sections in Gonzales-Gonzales. You know, and in fact, the Board of Immigration Appeals in Campos-Torres, an en banc decision, also found that you must give meaning to the words that Congress wrote in the very same stop time statute. In that case, the discussion was, do you give meaning to the referred to in 1182, that first step of the stop time statute, and there the Board said that a reading that would write out that language is an improper reading of the statute. If we reach the result you seek, are we creating a circuit split? I think you would create a circuit split with the Fifth Circuit. I think the Fifth Circuit, I think wrongly. I think they rely on examples that Respondent, in this case, concedes are not ideal and incorrect. But yes, I think the Fifth Circuit certainly goes the other way in this. And I think that the reasoning in that case is certainly worth projecting. We pay attention. We know they're there. Is that, no, no, that's a, this is, I take it that's an additional reason we should come out in an appellant's favor? So yeah, I mean, I think Take note of the Fifth Circuit's ruling. Yes. Exactly. I mean, I think that that is the ruling. We are not bound by that here in the Ninth Circuit. And just to further sort of emphasize, I think, how the structure of the Immigration and Nationality Act sets up this distinction between inadmissibility and deportability or removability. In fact, the heading of 1182, the heading around inadmissibility reads, classes of noncitizens ineligible for visas or admission. My client inarguably was not seeking a visa or admission. He's been admitted to the United States as a lawful permanent resident. He doesn't fall under any of the exceptions under 1101A13C. He's not seeking admission and therefore is not subject to those grounds of inadmissibility. You know, respondent at page 20 of this brief, and echoing the Fifth Circuit in colleagues, urges this Court to speculate that Congress may have intended inadmissibility for the stop-time rule to operate differently than inadmissibility in other contexts. Now, the Supreme Court again reminds us that that's not proper statutory interpretation to read the same word differently in other contexts of the statute. Finally, you know, even were this Court to find that the statute is ambiguous, there's no deference due here to the Board decision. It's an unpublished single-member Board decision in this case, and they rely pretty much solely on the reading from Gerardo Delgado, the Board case from 2006. However, Gerardo Delgado, while precedential, is not controlling on the point at issue here. It is binding precedent as to whether a conviction not listed on the notice to appear, so not listed on the charging document, could stop one's time. But again, that's not the question here, which is whether a lawful permanent resident who is not seeking admission can still have their time stopped for an offense that does not fall under 1227A2. And you know, in fact, for all of the Fifth Circuit's faulty reasoning in colleagues, colleagues does recognize this fact that Gerardo Delgado is not binding. You know, and actually, the fact that lara terrasis, which is an unpublished Board decision, just the fact that it exists and it's unpublished, we're not relying on the reasoning of that case. But lara terrasis comes out precisely as the plain language suggests and as we suggest is the proper reading, but it comes out several months after Gerardo Delgado. And so the Board, which is bound by its own precedential decisions, could not have issued lara terrasis if Gerardo was binding as to the point at issue, right? And so just the existence of lara terrasis confirms for us that Gerardo Delgado is not controlling on the point at issue. And in fact, Gerardo Delgado contains the important line that is important for its holding regarding the charges that aren't on the notice to appear, that one time stop, if one is potentially removable, if so charged. And my client is not. He was not potentially removable under 1182. He could not have been charged under 1182, and that's been conceded throughout this case. And this Court should not, were it to be found ambiguous, even afford Skidmore deference as there's no reasoning, they don't recognize that distinction in Gerardo Delgado. They discount all the reasoning of this Court in Gonzalez-Gonzalez because they say it removal statute without actually analyzing the reasoning and the work that this Court did in that case. And if there's no other questions, I'll reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. Timothy Hayes on behalf of the Attorney General. To qualify for cancellation or removal, petitioner has a burden to establish that he has resided in the United States continuously for seven years after having been admitted in any status. Under the stop-time rule, a person's period of continuous residence shall be deemed to end when two requirements are met. The first requirement is that the applicant must commit an offense referred to in Section 1182A2 of the Immigration and Nationality Act, and that is not in dispute in this case. What is in dispute is the second part of that definition, which says that that offense must, quote, render the alien inadmissible under 1182A2 or removable from the United States under 1227A2 or 1227A4. Petitioner's offense does render him inadmissible under 1182A2A Romanet I, subsection 2. And that section deals with any alien who omits committing acts which constitute the The plain language of the word renders means to cause or to become. And in the Huarto decision, the board interpreted that phrase, render the alien inadmissible or removable, as being potentially removable if so charged. And it is not true that a lawful permanent resident can never be deemed inadmissible. There are instances where a lawful permanent resident could be deemed inadmissible, and one of the most prominent ones is what was discussed earlier when he's at the border seeking admission. Now, if this petitioner was at the border seeking admission, and he admitted under oath and all the procedural requirements were met to having snorted cocaine in 2005, we would be in this exact same spot. So help me understand your argument as the plain language of the statute here. The government, I take it, is in agreement with the petitioner that you need both prongs to be met in order to stop accrual of continuous residents, the first being the commissioner. And the second being that that commission of defense has to render him inadmissible, correct? Correct. So then, as I understand the statute, LPRs are not regarded as seeking admission into the U.S. for purposes of immigration law, except under narrow circumstances, returning from abroad and so forth, which really don't apply here. So I'm not sure I understand how your interpretation squares with the plain language of the statute when LPRs, like Mr. Wynn, are not considered to be seeking admission. Because what you're saying, if I understand your argument correctly, is that the commission of defense will be enough to basically render him inadmissible, so LPRs are essentially just treated like everybody else. In this particular context, Your Honor, I think we're confusing the concepts of actually being removable from the United States from an alien seeking relief from removal, and they're discrete concepts. A LPR who is present in the United States can only be subject to removal under the deportability grounds. And the petitioner in this case is actually subject to the deportability grounds for entirely different conduct. Now, when you turn to the relief stage, Congress is referring to a list of offenses. The language of being inadmissible or deportable isn't the same in that context. And that's why I think when you get to this language, I agree that if you just say renders the alien inadmissible, if you look at it from a deportability or inadmissibility context as whether the United States government can make charges, yeah, that would be a point. But this is the relief stage of eligibility. It's not the charging stage. But how does that, given that LPRs are not subject to the grounds of inadmissibility except in the narrow circumstances that don't apply here, how is this conviction apply? Well, I wouldn't say if they don't, I wouldn't say that the circumstances are narrow. Again, if he would have departed the United States, effectively, he would never be able to depart. Because if he came back and he admitted to doing that in 2005, he would be inadmissible and ineligible for cancellation or removal there because it would trigger it. He would be an LPR who is rendered inadmissible to the United States. So the happenstance of whether he's present in the United States in a removal proceedings and he can apply or if he actually departs and tries to apply at the border, you'd be treating the same LPR differently depending on the context. I'm still unclear why your interpretation doesn't leave the second clause totally surplusage. I'm sorry. I didn't mean to interrupt you. There is some surplusage. I'll admit to that, Your Honor. And I have a couple— That's that light slashing? Oh. Because the Supreme Court and the BIA and this Court have all observed that we're not supposed to interpret statutes in such a way as to render—just to cut pieces of it out. It's a canon. It's—yeah, Your Honor. It's a problem. It is absolutely a problem. I fully acknowledge that. Two responses to that, though. The rule isn't absolute. In Lamy v. U.S. trustee, which is a Supreme Court case, they say, the rule for avoiding surplusage constructions is not absolute when applying the rule would make ambiguous and otherwise unambiguous statute. And we contend that the statute is unambiguous. You look at the words render, the dictionary definition of render is to cause, to be, or to become. So it doesn't mean that you actually have to be inadmissible at this point in time. If you're capable of being inadmissible because you have committed that offense, that's enough to trigger it. Why would the statute be expressed in a more convoluted way? Yeah. I don't— It's just—I mean, I understand—I mean, we all deal with immigration statutes, and they're not necessarily a model of clarity, and it's not like somebody wrote it all down at one time. It gets pushed around over time. But I have struggled to come up with an explanation for why it would be written this way. I can't. There isn't enough legislative history, if you were to resort to that, to really explain it. And it kind of gets to my second point. But the problem with that, if you can't explain it, then there's the alternative interpretation. I know you argue that it's unambiguous, but there is an alternative explanation that's not implausible on its face, which is that they set up these two different categories in the same way that much of immigration law is set up in different categories, because one applies to one kind of person and the other applies to another kind of person. And there may be circumstances where somebody in one category may subject himself to the other by leaving the country for a long time or whatever, but that's not the typical case. So it seems to me that if you've got an alternative explanation that doesn't require to clip a portion of the statute and throw it away, why don't you take that alternative interpretation? It does though, Your Honor. And the board got to this point in the compost decision that was discussed earlier. If you look at the entire statute, so we have the first section, which is the alien has to have committed offense referred to in section 1182A2. So that's prong one. Then we have prong two. We've been focusing on the language renders the alien inadmissible to the United States. If you continue and you go renders the alien inadmissible or removal from the United States, they give you two subsections. One is subsection 1227A2. The other is subsection 1227A4. The board made this point in compost that 1227A4 is surplusage. It's surplusage under any construction because you have to commit an offense under 1182 in order for 1227A4 is just security grounds. There is no ground in 1182 or no offense referred to in 1182 that would trigger removability under 1227A4. So the statute is just poorly drafted. And so we have two plausible constructions. Now we argue that it's plain language. Even if this court were to say it's not plain language, we would say Chevron deference under Wardo. Now I can see that Wardo isn't directly a point either because Wardo dealt with a more dis- Not even particularly close, I don't think. And it never discusses the surplusage problem. No, but they reference other cases that have, but I would agree with your honor. The reason why we rely on Wardo is it did discuss renders and how the board views the word renders. And it views the word renders as being capable or becoming or potentially being removable if so charged. So that does- It doesn't address the question in this case, which is whether an LPR could be rendered inadmissible when that applicant is not seeking admission. It doesn't directly address the question, no, your honor. And that's the question at the heart of this case. So I don't see how any deference can really be paid to Madhav Hirata on any level because it just simply doesn't apply to this situation. Well, it is interpreting the statutory language at issue. I agree that it's not in the context of this alien circumstances, but it does give meaning to the word renders the alien inadmissible and they do discuss it. And to the extent it's not directly on point, it certainly provides persuasive value for how the board does view the statutory language. And if- But that means the statute now says that you're not eligible for cancellation if you have either done A or if you have done A and then done either A or B. Well, once you've done A, that's the end of it. I mean, the second part of the statute gets cut off under any circumstance because having committed the act in 1127, you're saying that's the end of it. The whole reference to, I hate having to put glasses on, 1227 doesn't matter anymore. I wouldn't concede that far. Now I know the example we gave in our brief, there's dispute on that, but there is a potential example where an alien could, in a lawful perimeter, as in it could leave and try to seek admission coming back, be granted a waiver, which under board precedent, he would not have committed an offense referred to in 1182, but if he came into the United States, they could still charge him and potentially the removable discussion would come into play. Now I know it's kind of a convoluted example. None of that explains why the statute would be written this way. And so it makes it, I mean, we can imagine lots of circumstances. Supreme Court has observed that this court in particular is capable of dreaming up lots of circumstances, but that doesn't mean we're supposed to cut ourselves off from reality. And the reality here is that if you set up two different paths for inadmissibility and removability, you kind of expect to use the two different paths. But even under the other interpretation, you wouldn't be using the entire second path. I think it's more of a distinction without a difference because it's assuming that relief and removability is sort of contingent on whether somebody is actually subject to inadmissibility or removability grounds when they're charged and placed in removal proceedings. Even the Gonzalez case, you're using a lawful permanent residence can be deemed essentially inadmissible in a way because they can commit offense referred to in 1227-82, which are just inadmissibility grounds. They're not removability grounds. Now I admit that the language in this particular subsection adds, renders alien inadmissible, which is different than the language at issue in Gonzalez-Gonzalez. But renders means to cause, to be, or to become. And as the Fifth Circuit explained in Calix, a lawful permanent resident can still be subject to inadmissibility. They can still have the status of being inadmissible. But the Fifth Circuit concedes that that would render part of the statute superfluous. So under the government, Calix is reading one part of the statute be superfluous, but under petitioner reading, we can give effect to both provisions that the government sees in the case. Well, both provisions would never be given effect, Your Honor, because the 1227-84 is just superfluous there, too. I mean, I understand the point, but the statute is, has... I'm not quite sure I understand that thought. So you're saying that because the second clause, by reference to two statutes, creates its own little bit of superfluity, we should therefore assume that the entire clause was superfluous? No, Your Honor, but the rule for a surplusage is not absolute, and the language renders the alien inadmissible is plain on its face. It means to cause, to be, or to become. So I mean, if you accept the premise that a lawful permanent resident can never be inadmissible, then that would be true, but that premise is not true. I mean, I understand... And it would make sense if applied to somebody who was actually a lawful permanent resident but exposes himself to the situation, granted rare, and fine, but if that's the out-of-the-ordinary situation, it's hard to understand, again, how the statute could be intended to speak to that. I wouldn't say it's out-of-the-ordinary, Your Honor, because lawful permanent residents, like U.S. citizens, they travel abroad a lot. So again, if he ever traveled abroad, we can potentially have an inadmissibility problem, even though he's in LPR. But the travel had to be pretty extended, or he had to demonstrate a... No, Your Honor. Absolutely not, Your Honor. You are thinking of whether someone... No, but Congress accounted for that by subjecting them to grounds of inadmissibility when they return, if there's evidence of abandonment of LPR. So that situation is already taken care of and contemplated in this statutory scheme. Is it more than abandonment? It's more than abandonment. I'm referring specifically to 1101A13C, Romanet 5. And that speaks to when a lawful permanent resident is actually committed an offense. It doesn't require a period of time. It's automatic. It's automatic. So that overruled the flu doctrine, which was casual, brief departures never triggered an admission and admissibility inquiry before, but it's different now, and that came about with IRERA. So... And the only other thing I want to get in my brief time, and I apologize, Your Honor, is we also believe that if you ruled in petitioner's favor, you would be creating a split with the Second Circuit in Heredia, because the Second Circuit in Heredia said, the plain language of the statute thus suggests that one who has been convicted of a controlled substance offense is no longer capable of being admitted to the United States, should he ever apply. It is not necessary to apply and be actually refused admission for one to be in effect and in law not capable of being admitted. The BIA has adopted this interpretation, and it goes and agrees with it. So that's at page 68. And unless there's any... Creating a split with the Second Circuit is clearly an offense against God. Oh, that's right, Your Honor. You're on the Second Circuit. Thank you very much. Thank you. Gee, I thought the Second Circuit thought you diverged from time to time yourself. So just real quickly to try to clarify, I think there was some confusion over that the seeking admission in lawful permanent residence. You know, lawful permanent residence can and are deemed to be seeking admission under specific circumstances, including traveling and including after having been convicted of offenses and then trying to seek entry. And that's where, you know, as Judge Winn mentioned, the Stop Time Rule contemplates that, right? So as we read the statute, that is captured under the rule, right? One commits an offense referred to in 1182. And on returning, when one then is chargeable as a lawful permanent, when one then is chargeable under 1182, one then is rendered inadmissible. One is made inadmissible. That's what that means. And I think that the reliance on the word render strikes me as somewhat... It sort of, I think, misses the grammatical structure of the statute, right? So, you know, in the briefing and in colleagues, they rely on this difference between is it admissible versus rendered inadmissible. And, you know, the structure of the Stop Time Rule, the subject of that sentence, is the crime that one commits, right? So the crime is not anything, right, the person. So the crime makes one or renders one inadmissible or removable. So I think the reliance on the word render simply misses that. The structure that Congress chose for the Stop Time Rule is grammatical. Again, I don't think that there's any dispute in this case that the reading proposed by respondents renders as surpluses a significant part of the statute. Did you have to say renders? I think it's actually useful because I think we know that what renders means is it makes, right? It makes it surpluses. And I think that there is no disagreement on that. And so, and there is no... The circumstance that they give where we're a lawful prone resident, like my client. If my client, like actually Mr. Arredia in the second certain case, he was deemed to have been seeking admission. If my client had been seeking admission, our reading would have meant that his time would have been stopped. He would not have been eligible for lawful permanent resident cancellation. We don't dispute that. And yet, and they're trying, I feel like they're trying to sort of confuse the issue by saying that, yes, sometimes they're rendered admissible. Yes, when they only then, once they leave and are deemed to be seeking admission. Other than that, my client was not potentially chargeable under 1182A2. And the reading that they propose writes out a large part of the second part of that statute. And that cannot be the proper reading given to the plain language that Congress chose for that statute. Unless there's any further questions, I will end here. Thank you. You got the argument. Thank you so much. The matter is submitted for a decision by the court. And that concludes our argument calendar for the day. We're in recess.
judges: Clifton, Nguyen, Rakoff